IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Case No. 3:24-cr-00078-E-1 |
| | § | |
| ANTHONY MARQUETTE CLARK | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Anthony Clark is charged by indictment with violations of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Possession with Intent to Distribute a Schedule I Controlled Substance) and 18 U.S.C. §§ 924 (c)(1)(A) & (c)(1)(A)(i) (Possession of a Firearm in Furtherance of Drug Trafficking Crime). He has filed a motion seeking to suppress the firearm and drugs seized from him on June 30, 2021 following a traffic stop. Mot. (ECF No. 34). As explained below, the District Judge should DENY the motion.

I.

At 1:30 in the morning on June 30, 2021, Dallas Police Department (DPD) Officers Jackson and Debenport observed a vehicle exit a QuikTrip parking lot onto Forest Lane in Dallas, Texas. Gov't Ex. 1 (ECF No. 37-1). The vehicle drove through a sidewalk in front of the parking lot without coming to a full stop. *Id.* The officers activated the lights on their police cruiser, and the vehicle promptly pulled into a 7-Eleven gas station. *Id.*

For officer safety, Officer Jackson instructed the driver to roll down all the vehicle's windows. *Id*. The driver—Defendant Clark—complied. *Id*. Then, as Officer Debenport spoke to Clark through the driver's side window, Officer Jackson approached on the passenger-side. Gov't Ex. 2 (ECF No. 37-2). Almost immediately, Officer Jackson observed a firearm, not in a holster, on the passenger floorboard. *Id*.

Officer Jackson removed the firearm from Clark's vehicle, and Officer Debenport took it to conduct a weapons check. Gov't Ex. 3 (ECF No. 37-3). After the weapons check was complete, the officers removed Clark from the vehicle and placed him under arrest for unlawfully possessing a weapon in plain view.[1] Officer Jackson searched Clark incident to his arrest and found two clear baggies with suspected drugs in his underwear. Gov't Ex. 2. Lab tests later confirmed the baggies contained fentanyl pills and eutylone. Resp. 3 (ECF No. 37).

On March 5, 2024, a grand jury returned an indictment charging Clark with two counts of Possession with Intent to Distribute a Schedule I Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §§ 924(c)(1)(A) & (c)(1)(A)(i).

---

[1] On June 30, 2021, it was unlawful for an individual to carry a handgun in a motor vehicle in plain view unless the individual was licensed to carry a handgun and the handgun was in a shoulder or belt holster. *See* Tex. Penal Code Ann. § 46.02(a–1)(1) (effective September 1, 2019 to August 31, 2021).

Clark filed a "Motion to Dismiss" seeking an order suppressing all the evidence seized by Officers Jackson and Debenport on June 30, 2021. *See generally* Mot. (ECF No. 34). In his motion, he argues (i) the traffic stop violated his Fourth Amendment rights because the officers did not have an objectively reasonable basis for the traffic stop and (ii) the search of his person exceeded the permissible scope of a search incident to arrest. *Id.* The court held an evidentiary hearing on the motion on August 15, 2025. *See* Min. Entry (ECF No. 40). At the hearing, Clark also argued that his arrest was illegal because the gun was not in plain view.

## II.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. And courts must generally suppress evidence derived from an unreasonable search or seizure. *See United States v. Alvarado-Zara*, 782 F.3d 246, 249 (5th Cir. 2015). Normally, a defendant bears the burden of proving by a preponderance of the evidence that a challenged search or seizure was unconstitutional, but where, as here, a police officer acts without a warrant, the government bears the burden of proving the search or seizure was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (internal citations omitted).

## III.

### A.

Clark first argues that he was subject to an illegal seizure because the officers were not justified in pulling him over on June 30, 2021. *See* Mot. 2–7. He claims

that, under Texas law, he did not need to stop before turning onto Forest Lane. *Id.* at 5. He also argues that he did, in fact, "briefly pause" before entering the roadway. *Id.*

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine whether a seizure is reasonable, the court considers (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506 (citing *Terry*, 392 U.S. at 19–20). For a traffic stop to be justified at its inception, an officer must have "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005) (citing *United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995).

To determine whether an officer had reasonable suspicion, the Court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion exists "when the officer can point to specific and articulable facts which, taken together

4

with rational inferences from those facts, reasonably warrant the search and seizure." *Lopez-Moreno*, 420 F.3d at 430.

Contrary to Clark's assertions, the initial stop on June 30, 2021 was justified because Officers Jackson and Debenport had an objectively reasonable suspicion that Clark had committed a traffic violation. Specifically, section 545.256 of the Texas Transportation Code requires a vehicle driver "emerging from an alley, driveway, or building in a business or residence district"—like the QuikTrip on Forest Lane—to "stop the vehicle before moving on a sidewalk or the sidewalk area extending across an alley or driveway." Tex. Transp. Code Ann. § 545.256. And, as the video from Officers Jackson and Debenport's police cruiser's dashboard camera shows, Clark's vehicle exited the QuikTrip parking lot on June 30, 2021, without pausing—much less coming to a full stop—before it crossed the sidewalk and turned onto Forest Lane. The officers' action was thus justified at its inception. *See Ivie v. State*, 407 S.W.3d 305, 314 (Tex. App.—Eastland 2013, pet. ref'd) (trial court did not abuse its discretion in denying the defendant's motion to suppress based on the traffic stop because the officer observed the defendant leave a gas station parking lot without stopping before entering the roadway) (citing Tex. Transp. Code Ann. § 545.256 (West 2011)).

Clark contends that Officer Jackson and Debenport pulled him over because—as stated in the police report generated after his arrest—he "failed to yield" at the sidewalk, presumably in violation of § 545.155 of the Texas Transportation Code. According to Clark, Section 545.155 does not require a full

5

stop if there is no other vehicle present on the road. But Officer Jackson explained to Clark on June 30, 2021 that he had been stopped because:

> *When you come out these gas stations and these private driveways when there's a sidewalk, you can't just go straight out.* When someone's walking across the sidewalk you gonna hit them. Especially when its dark. *You gotta stop*, make sure no one's crossing the sidewalk, and then come out.

Gov't Ex. 3 at 7:14–7:45.

The government has satisfied its burden to establish that the initial traffic stop was justified.

### B.

Although Clerk did not raise the issue in his motion, he argued at the hearing that Officer Jackson's seizure of the gun from his car was illegal because the gun was not in plain view.

A warrantless seizure of an item is permissible if "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was immediately apparent; and (4) the police had a lawful right of access to the item." *United States v. Virgil,* 444 F.3d 447, 451 (5th Cir. 2006) (citing *United States v. Buchanan,* 70 F.3d 818, 825–26 (5th Cir. 1995)) (internal quotation marks omitted).

Officers Debenport and Jackson pulled Clark over in a high-crime area at 1:30 in the morning, after they observed him commit a traffic violation. Clark pulled into a 7-Eleven gas station, and the officers pulled in behind him. For their safety, Officer Jackson directed Clark to roll all his windows down before they

approached the car to talk to him. Clark complied. When Officer Jackson reached the passenger-side of the car, he looked inside and immediately saw a gun on the floorboard. Officer Jackson did not have to lean inside the car or move anything inside the car to see the gun. Officer Jackson testified that he observed the gun was not holstered and was laying against the console. Officer Jackson told his partner, who was on the other side of Clark's car, that there was a gun in the car. Officer Jackson also asked Clark if the gun belonged to him. Officer Jackson then seized the gun, and Officer Debenport took it to conduct a weapons check.

Although it is harder to see from the perspective of Officer Jackson's body worn camera, the gun is visible on the video. There is no evidence that the gun was not in plain view or that any of the other elements of the plain view doctrine were not satisfied. *See United States v. Earthman*, 995 F. Supp. 2d 579, 586 (N.D. Tex. 2014) (holding pistol was lawfully seized from defendant's vehicle during traffic stop under plain view doctrine when, after defendant exited the vehicle, officer observed empty pistol holder on driver side floorboard near gas pedal, immediately thereafter observed loaded pistol on floorboard near driver seat, and the pistol was not under or obstructed by driver seat); *see also Ruiz v. State*, 907 S.W.2d 600, 605 (Tex. App.—Corpus Christi-Edinburg 1995, no writ) (holding handgun seen lying on front right side of hump of floorboard in defendant's car was lawfully seized under "plain view" doctrine where initial intrusion resulted from proper stop of defendant's vehicle and handgun was immediately apparent to officer).

C.

Clark further argues that the search of his person exceeded the permissible scope of a search incident to arrest. *See* Mot. 7–8.

"Once police make a lawful arrest, a full search of a person incident to the arrest 'requires no additional justification' and constitutes a reasonable search under the Fourth Amendment." *U.S. v. Clark*, 647 F. App'x 419, 423 (5th Cir. 2016) (first quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973), then citing *United States v. Johnson*, 445 F.3d 793, 795-96 (5th Cir. 2006)). The exception to the warrant requirement for a search incident to arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). A search conducted incident to arrest is limited to "the arrestee's person and the area 'within his immediate control'" that includes "the area from within which he might gain possession of a weapon or destructible evidence.'" *Gant*, 556 U.S. at 339.

On June 30, 2021, Texas law prohibited the carrying of a handgun in a motor vehicle in plain view unless the handgun was in a shoulder or belt holster. *See* Tex. Penal Code Ann. § 46.02(a–1)(1) (effective September 1, 2019 to August 31, 2021). Officer Jackson observed a handgun in Clark's vehicle in plain view and not in a holster. After he seized the gun, Officer Jackson arrested Clark for unlawfully possessing a weapon. Then, he searched Clark incident to the arrest. Officer Jackson patted down Clark and felt a bulge under his pants. The bulge turned out

to be two baggies of drugs hidden in Clark's underwear. Officer Jackson seized the drugs.

Officer Jackson's search did not exceed the permissible scope of a search incident to arrest. He patted down Clark's pants, an area within his immediate control and from which he could gain possession of the destructible evidence—such as the drugs he had hidden there.

### Recommendation

Because the Government satisfied its burden to prove Officer Jackson validly seized the gun and the drugs from Clark on June 30, 2021, the District Judge should DENY Clark's Motion to Dismiss (ECF No. 34).

**SO ORDERED**.

August 18, 2025

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).